UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BENJAMIN SCHEFFER, on Behalf of
Himself and All Others Similarly
Situated,

      Plaintiffs,

vs.

TOP RANK, INC., a Nevada Corporation,
and EMMANUEL D. PACQUIAO, ROBERT
ARUM, TODD DUBOEF, and MICHAEL
KONCZ,

      Defendants.
_____/

CASE NO.: 0:15-cv-60952

**COMPLAINT FOR MONEY DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff, Benjamin Scheffer ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants, Top Rank, Inc. ("Top Rank"), a Nevada Corporation, Emmanuel "Manny" J. Pacquiao ("Pacquiao"), Robert Arum ("Arum"), Todd DuBoef ("Duboef"), and Michael Koncz ("Koncz") (collectively referred to as "Defendants") and states:

**JURISDICTION AND VENUE**

1.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of Plaintiffs are citizens of states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens and/or reside.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts

and transactions giving rise to this action occurred in this District. In particular, a substantial number of persons who purchased a pay-per-view broadcast of the Mayweather-Pacquiao fight live in this District as well as numerous persons who purchased a ticket to attend the Mayweather-Pacquiao fight. Defendant, Top Rank, is a Nevada Corporation with its principal place of business in Las Vegas, Nevada and it has intentionally availed itself of the laws and markets within this District. Defendant, Pacquiao is believed to be a resident of Los Angeles, California. Defendant, Arum is believed to be a resident of Nevada. Defendant, DuBoef is believed to be a resident of Nevada. Defendant, Koncz is believed to be a resident of the Philippines.

## PARTIES

3. At all times relevant to this matter, Plaintiff was a citizen of Florida and resided and continues to reside in Fort Lauderdale, Broward County, Florida.

4. Upon information and belief, Defendant, Pacquiao is a resident of Los Angeles, California and was responsible for or instrumental in the actions, inactions, and decisions that led to the failure of the Defendants to disclose the injuries suffered to himself.

5. Defendant, Top Rank, is a Nevada Corporation with its principal place of business in Las Vegas, Nevada.

6. Upon information and belief, Defendant, Arum is a resident of Nevada and is the Treasurer and Director of Top Rank and was responsible for or instrumental in the actions, inactions, and decisions that led to the failure of the Defendants to disclose the injuries to Defendant, Pacquiao.

7. Upon information and belief, Defendant DuBoef is a resident of Nevada and is the President of Top Rank and was responsible for or instrumental in the actions, inactions, and

decisions that led to the failure of the Defendants to disclose the injuries to Defendant, Pacquiao.

8. Upon information and belief, Defendant, Koncz is a resident of the Philippines and is an advisor of Defendant, Pacquiao and was responsible for or instrumental in the actions, inactions, and decisions that led to the failure of the Defendants to disclose the injuries to Defendant, Pacquiao.

## FACTUAL ALLEGATIONS

9. Defendant, Pacquiao is a world champion professional boxer who was the first boxer in history to win ten (10) world boxing titles in eight (8) different weight divisions. He was previously named "Fighter of the Decade" for the 2000's by the Boxing Writers Association of America ("BWAA") and the World Boxing Organization, and was named "Fighter of the Year" in 2006, 2008, and 2009.

10. According to Forbes, Defendant, Pacquiao was the fourteenth (14) highest paid athlete in the world as of 2013.

11. On May 2, 2015, a boxing match ("the Fight") was scheduled to take place between Defendant, Pacquiao and another world-renowned champion boxer, Floyd Mayweather, Jr. ("Mayweather") at the MGM Grand hotel and casino in Las Vegas, Nevada. The Fight was promoted for months as the "Fight of the Century" and as such, drew hordes of celebrities and boxing aficionados making it a coveted event to both witness and attend.

12. The Fight was promoted by Defendant, Top Rank, which is one of the nation's premiere boxing promotions companies.

13. Both Defendant, Pacquiao and Mayweather received massive gross revenue – reported to be approximately $100 million each – for the Fight. Upon information and belief, Top Rank also profited handsomely from the Fight.

14. The Fight was broadcast on pay-per-view with the average cost for an individual television broadcast costing approximately $99.99. Upon information and belief, countless businesses such as bars and restaurants paid many times that amount.

15. The Fight took place on the evening of May 2, 2015, as scheduled, and Mayweather ultimately prevailed in a unanimous decision over Defendant, Pacquiao. Spectators were generally underwhelmed and displeased by the Fight, with champion boxer Mike Tyson terming it the "Dud of the Century."

16. After the Fight had ended, it was revealed that Defendant, Pacquiao had suffered a shoulder injury at some point prior and continued to suffer from that same or a similar type of injury during the Fight, making him unable to compete to his full ability.

17. On May 4, 2015, it was reported to ESPN that Defendant, Pacquiao had suffered a tear in his rotator cuff that would require surgery and an extensive recovery time estimated at nine (9) to twelve (12) months.

18. Upon information and belief, Defendant, Top Rank was one the promoters of the "Fight of the Century" and failed to disclose the injury to the Nevada Athletic Commission ("NAC") prior to the Fight as is required by Nevada law.

19. When the Nevada State Athletic Commission conducted its pre-fight examination of Defendant, Pacquiao on May 1, 2015, the Friday afternoon before the Fight, Defendant, Pacquiao was provided a questionnaire to complete and resubmit. See Exhibit A. Among the questions was: Have you had any injury to your shoulders, elbows, or hands that needed evaluation or examination? Under penalty of perjury, Defendant, Pacquiao replied in the negative.

20. Following the completion of the Fight, one of Defendant, Pacquiao's sparring

partners allegedly reported that Defendant, Pacquiao had in fact been injured a few weeks prior to the Fight, and that the injury was allegedly severe enough to require Defendant, Pacquiao to discontinue his training and/or sparring for the remainder of the session.

21. As a result of this same injury, Defendant, Pacquiao allegedly requested an injection of Toradol a/k/a Ketorolac (a non-steroidal prescription medication) as well as the numbing drug Lidocaine prior to the fight. That request was subsequently denied by the NAC.

22. At this present time, Defendants have allegedly admitted to various sources that Defendant, Pacquiao had in fact suffered an injury to his shoulder prior to the Fight and that this injury was not disclosed to, among others, the NAC and Plaintiffs.

23. Defendant, Pacquaio could face disciplinary action from the NAC and other governing boxing regulatory committees, including fine or suspension, as a result of his misrepresentation on the questionnaire and/or failure to disclose his preexisting injury or condition.

## Class Action Allegations

24. Plaintiff brings this lawsuit on behalf of himself and the proposed Class members under Rule 23(a) and (b) of the Federal Rules of Civil Procedure. The proposed nationwide Class consists of:

> All persons who purchased a pay-per-view broadcast of the Fight which took place in Las Vegas, Nevada on May 2, 2015; All persons who purchased a ticket to be in attendance of the Fight, and all persons who placed legal wagers on the fight.

25. **Numerosity:** The Class consists of thousands if not hundreds of thousands of consumers. Therefore, the members of the Class are so numerous that their individual joinder is

impracticable. The precise number of Class members is unknown to Plaintiff. Fla. R. Civ. P. Rule 1.220(a)(1) and F.R.C.P. 23(a)(1).

26. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members pursuant to F.R.C.P. 23(a)(1), F.R.C.P. 23 (b)(3), Fla. R. Civ. P. 1.220(a)(1), and Fla. R. Civ. P. 1.220(b)(3). These common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendants falsely, deceptively, and misleadingly represented Defendant, Pacquiao's health status or condition prior to the Fight.

27. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class and Plaintiff has the same claims as those of the other Class members. F.R.C.P. 23(a)(3), Fla. R. Civ. P. 1.220(a)(3), and Fla. R. Civ. P. 1.220(c)(2)(C).

28. **Adequacy of Representation:** Plaintiff fairly and adequately represents the Class and will protect the interests of the members of the Class. Plaintiff has retained counsel that is experienced in consumer class action litigation, and Plaintiff has no adverse or antagonistic interests to those of the Class.

29. **Superiority:** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or

contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, a class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## COUNT I - FRAUD/INTENTIONAL MISREPRESENTATION

30. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

31. Plaintiff, and each member of the Class, paid a significant amount of money to watch the Fight.

32. Unknown to Plaintiff and the Class members, Defendant, Pacquiao was injured prior to the Fight, rendering him unable to fight to his full ability.

33. Defendants' intentionally and wrongfully concealed, suppressed, misrepresented, and omitted material facts relating to Defendant, Pacquiao's injury or health status to Plaintiff and the Class members in order to receive millions of dollars in compensation.

34. As a result of Defendants' fraud and intentional misrepresentations, Plaintiff and the Class members have suffered damages.

## COUNT II – UNJUST ENRICHMENT

35. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

36. Through deceptive promotional tactics and misrepresentations, Defendants promoted, marketed, and sold to consumers, via pay-per-view and attendance tickets, the Fight, by means of fraudulent, deceptive, and/or negligent misrepresentations.

37. As a result of the unlawful conduct described herein, Defendants profited at the expense of Plaintiff and the other Class members as the portion of the pay-per-view cost paid to and distributed amongst Defendants came directly from the cash, checking, savings, or credit card accounts of Plaintiffs and all potential Class members, and have thus been unjustly enriched.

38. Defendants have knowledge of the benefits that Plaintiff and all potential Class members have conferred on them and have accepted those benefits.

39. Based upon the foregoing acts, Defendants receipt and retention of this financial benefit is unfair and improper under the circumstances.

40. As such, Defendants should be required to disgorge the money they retained as a result of its unjust enrichment.

## COUNT III – FRAUDULENT CONCEALMENT

41. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

42. Prior to and at the time the Plaintiff and the Class decided to purchase tickets, purchase pay-per-view showings, or wager on the Fight, Defendants knew and had full knowledge and information that Defendant, Pacquiao had been seriously injured and was suffering from a shoulder injury. Defendants had further knowledge that such an injury to Defendant, Pacquiao would severely affect his ability to perform in the Fight.

43. Despite having this knowledge, none of the Defendants informed or apprised the public of even the NAC of the injury to Defendant, Pacquiao.

44. At all relevant times herein the Defendants, had a duty to disclose the injury and intentionally concealed and/or failed to disclose the aforementioned material facts to the

Plaintiffs and the Class, as well as the NAC.

45. Plaintiffs and the Class relied on the Defendants to their detriment to disclose this information which the Plaintiffs and the Class were unaware of at the time of the purchase of tickets, pay-per-view showings, and/or wagering on the Fight.

46. As a direct and proximate cause of the Defendants' material omissions and concealments, Plaintiffs and the class members suffered ascertainable losses consisting of the purchase price of the tickets, purchase price of pay-per-view showings, and wagers that were placed.

### COUNT IV – STATUTORY CONSUMER PROTECTION AGAINST DECEPTIVE AND UNFAIR TRADE PRACTICES (Fla. Stat. §§501.201 et seq.)

47. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

48. Under FDUTPA, unconscionable, unfair, and deceptive acts or practices in the conduct of trade or commerce are unlawful. Fla. Stat. §501.204(1).

49. Anyone aggrieved by a violation of FDUTPA may bring an action to obtain a declaratory judgment that an act or practice violates the law, to enjoin a person who has violated, or is otherwise likely to violate the law, and for damages, plus attorney's fees and court costs. Fla. Stat. §501.211.

50. Pursuant to Fla. Stat. §501, the Defendants knowingly engaged in predatory, wrongful, fraudulent, and deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by engaging in certain prohibited conduct, including but not limited to:

   a. Engaging in a deceptive trade practice as defined in F.S. §501, inclusive.

   b. Failing to disclose a material fact in connection with the sale of...goods.

    c. Violating a state or federal statute or regulation relating to the sale...of goods or services.

    d. Making any other false representation in a transaction.

    e. By misrepresenting the quality of products offered for sale.

    f. By representing or promoting the Fight without disclosing material facts to Plaintiffs and Class members.

51. As a direct and proximate cause of Defendants' deceptive and unfair trade practices/consumer fraud, as herein alleged, Plaintiffs and the Class have been damaged.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

    A. Certifying the Class as requested herein;

    B. Awarding Plaintiff and the proposed Class members damages;

    C. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

    D. Awarding Plaintiff and the Class punitive damages;

    E. Awarding attorneys' fees and costs; and

    F. Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

BENJAMIN SCHEFFER, on Behalf of
Himself and All Others Similarly
Situated,

    Plaintiffs,

vs.

TOP RANK, INC., a Nevada Corporation,
and EMMANUEL D. PACQUIAO,
ROBERT ARUM, TODD DUBOEF,
and MICHAEL KONCZ,

    Defendants.

_____/

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2015 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Michael J. McMullen, Esq.

# SERVICE LIST
## United States District Court, Southern District of Florida

**COHEN & MCMULLEN, P.A.**
Michael J. McMullen
Fla. Bar 10609
Counsel for Plaintiff
1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone:  (954) 523-7774
Facsimile: (954) 523-2656
Email: Michael@floridajusticefirm.com

**COHEN & MCMULLEN, P.A.**
Bradford M. Cohen, Esq.
Fla. Bar 118176
Counsel for Plaintiff
1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone:  (954) 523-7774
Facsimile: (954) 523-2656
Email: service.bclaw@gmail.com